UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL J. VENTRICELLI,

                          Plaintiff,

v.                                                                          1:19-CV-0230
                                                                           (GTS/DJS)
WILLIAM F. NICKLIN; RIVERLIFE INVESTMENT
HOLDINGS LLC; MULTI-PACK HOLDINGS, LLC;
and LYNN E. GORGUZE,

                          Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

BECKER GLYNN MUFFLY CHASSIN &                 ALEC P. OSTROW, ESQ.
HOSINSKI LLP
  Counsel for Plaintiff
299 Park Avenue, 16th Floor
New York, NY 10171

BAKER & HOSTETLER LLP                             JORIAN ROSE, ESQ.
  Counsel for Defendants Nicklin & Riverlife       MICHELLE N. TANNEY, ESQ.
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

POLSINELLI PC                                            JASON A. NAGI, ESQ.
  Counsel for Defendant Multi-Pack
600 Third Avenue, 42nd Floor
New York, NY 10016

HUGHES, HUBBARD & REED LLP                       DANIEL H. WEINER, ESQ.
Counsel for Defendant Gorguze
One Battery Park Plaza
New York, NY 10004

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

Currently pending before the Court, in this action to set aside fraudulent conveyances filed by Daniel J. Ventricelli ("Plaintiff") against William F. Nicklin ("Defendant Nicklin"), Riverlife Investment Holdings LLC ("Defendant Riverlife"), Multi-Pack Holdings LLC ("Defendant Multi-Pack"), and Lynn E. Gorguze ("Defendant Gorguze"), are Defendant Gorguze's motion to remand and Defendant Riverlife's motion to transfer venue to the Southern District of New York.  (Dkt. No. 25; Dkt. No. 30.)  For the reasons set forth below, Defendant Gorzue's motion to remand is denied and Defendant Riverlife's motion to transfer venue is granted.

## I.      RELEVANT BACKGROUND

### A.      Relevant Procedural Background

On September 13, 2017, C.L. King & Associates, Inc. ("C.L. King") filed a Complaint in the Supreme Court of New York, Albany County, against Defendants Nicklin, Riverlife, Multi-Pack, and Gorguze (both in her individual capacity and as Trustee of the Lynn. E. Gorguze Separate Property Trust and the Vincent & Gloria Gorguze Trust).  (Dkt. No. 1-1.)  C.L. King also filed seven separate lawsuits against various members of Defendant Nicklin's family.  (Case Nos. 1:19-cv-0229, 1:19-cv-0234, 1:19-cv-0243, 1:19-cv-0244, 1:19-cv-0245, 1:19-cv-0248, 1:19-cv-0250.)  In October 2018, Defendants Gorguze and Multi-Pack each filed a motion to dismiss for lack of personal jurisdiction in the New York State Supreme Court, Albany County.[1]

---

[1]      The Court does not analyze the merits of the two above-referenced motions to dismiss for lack of personal jurisdiction because they were not refiled in this Court in accordance with the District's Local Rules of Practice, as required by Local Rule 81.3.  In any event, no party has argued for such consideration in the immediate action.  "Although common to resolve challenges to personal jurisdiction before addressing motions to transfer venue . . . it is not

(Dkt. No. 1-9; Dkt. No. 40, at 6.)

On January 18, 2019, Defendant Nicklin filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Southern District of New York, Bankruptcy Petition No. 19-35092. (Dkt. No. 41, at ¶ 7 [Weiner Affidavit].) On February 21, 2019, Daniel J. Ventricelli ("Plaintiff") was elected to serve as Trustee of the Estate at Defendant Nicklin's Section 341 creditor meeting. (Dkt. No. 46, at 2.)

On February 19, 2019, Defendant Riverlife filed a notice of removal pursuant to 28 U.S.C. §§ 1334, 1446, and 1452. (Dkt. No. 1.) In its Notice of Removal, Defendant Riverlife indicated that it would move to transfer venue to the Southern District of New York, the location of Defendant Nicklin's Chapter 7 bankruptcy proceeding. (Dkt. No. 1, at ¶ 13.)

On March 21, 2019, Defendant Gorguze filed a motion to remand this action back to the Supreme Court of New York, Albany County. (Dkt. No. 25.) On June 7, 2019, Defendant Riverlife filed a motion to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 30.) On September 13, 2019, Plaintiff submitted a reply to both motions, in which he consented to Defendant Riverlife's motion to transfer venue to the Southern District of New York, and opposed Defendant Gorguze's motion to remand this action to the New York Supreme Court, Albany County. (Dkt. No. 39.)

---

required that courts do so." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (citations omitted). Courts have the power to transfer a case, even if the transferring court does not have personal jurisdiction over the parties "and whether or not venue is proper" in the district, provided that the transfer is in the interest of justice. *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y 1977); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962); 28 U.S.C. 1406.

### A. Defendant Gorguze's Motion to Remand

#### 1. Summary of Defendant Gorguze's Arguments

Generally, in her motion to remand, Defendant Gorguze asserts two arguments. (Dkt. No. 25-2.) First, Defendant Gorguze argues that remand is both required and appropriate under the doctrine of mandatory abstention because all of the requisite factors are met. (Dkt. No. 25-2, at 4-6.) In the alternative, Defendant Gorguze argues that the Court should remand this action under the doctrines of permissive abstention and equitable remand. (Dkt. No. 25-2, at 6-10.)

#### 2. Summary of Defendant Riverlife's Response

Generally, in response to Defendant Gorguze's motion, Defendant Riverlife asserts two arguments. (Dkt. No. 35.) First, Defendant Rivelife argues that Defendant Gorguze fails to meet the elements for mandatory abstention because Defendant Gorguze cannot establish that this matter would be "timely adjudicated" in state court. (Dkt. No. 35, at 10-14.) Second, Defendant Riverlife argues that Defendant Gorguze's permissive abstention and equitable remand arguments are meritless because Defendant Gorguze offers no compelling reason for permissive abstention. (Dkt. No. 35, at 14-17.) Defendant Riverlife offers a similar explanation regarding the doctrine of equitable remand. (Dkt. No. 35, at 14-17.)

#### 3. Summary of Defendant Gorguze's Reply

Generally, in reply to Defendant Riverlife's opposition, Defendant Gorguze asserts that the first five factors for mandatory abstention are undisputed, and that the New York State Supreme Court can timely adjudicate the immediate action. (Dkt. No. 43, at 5-11.) In the alternative, Defendant Gorguze reiterates her argument that the Court should apply the doctrines of permissive abstention and equitable remand in the interest of justice. (Dkt. No. 43, at 11-15.)

### B.    Defendant Riverlife's Motion to Transfer Venue

#### 1.    Summary of Defendant Riverlife's Arguments[2]

Generally, in its motion to transfer venue, Defendant Riverlife argues that this action could have been originally filed in the Southern District of New York because all Defendants reside in New York State and the interests of justice, as well as the convenience of the parties and witnesses, weigh in favor of transferring venue to the Southern District of New York. (Dkt. No. 30-1, at 5-9.)

#### 2.    Summary of Defendant Gorguze's Arguments

Generally, in its opposition to Defendant Riverlife's motion to transfer venue, Defendant Gorguze argues that this action could not have originally been filed in the Southern District of New York because not all Defendants in fact reside in New York State, and that the interests of justice weigh against transferring venue. (Dkt. No. 40, at 8-13.) Defendant Gorguze emphasizes the fact that multiple Defendants are domiciled outside of New York State and argues that the conveyances pursuant to a settlement agreement to non-family members are not related to the alleged fraudulent conveyances at issue in this action. (Dkt. No. 40, at 13.)

#### 3.    Summary of Defendant Riverlife's Reply

Generally, in its reply memorandum of law, Defendant Riverlife reiterates its argument that the interest of justice favors transferring venue to the Southern District of New York. (Dkt. No. 42, at 7-10.) Additionally, Defendant Riverlife argues that the Court has original jurisdiction over this matter. (Dkt. No. 42, at 5-6.)

---

[2]    Defendant Riverlife is respectfully reminded that, pursuant to the Court's Local Rules of Practice, memoranda of law must contain a table of contents. N.D.N.Y L.R. 7.1(a)(1).

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Remand

"A motion to remand the case on the basis of any defect other than lack of subject matter

jurisdiction must be made within 30 days after the filing of the notice of removal under 1446(a)."

28 U.S.C. § 1447(c).

> Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, related to a case under title 11 but not
> arising under title 11 or arising in a case under title 11, with respect to
> which an action could not have been commenced in a court of the United
> States absent jurisdiction under this section, the district court *shall* abstain
> from hearing such proceeding if an action is commenced, and can be
> timely adjudicated, in a State forum of appropriate jurisdiction.[3]

28 U.S.C. § 1334(c)(2) (emphasis added).

### B.    Legal Standard Governing Motions to Transfer Venue

An action can only be brought in "(1) a judicial district where any defendant resides, if all

defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the

---

[3]      Section 1334(b) of Title 28 of the United States Code "provides for federal jurisdiction over proceedings 'arising under title 11 or arising in or related to a case under title 11.'" *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 14 (Bankr. E.D.N.Y. 1997). "Transfer of venue for a non-core proceedings is governed by 28 U.S.C. § 1404(a)." *ICICI Bank Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 248 (Bankr. S.D.N.Y. 2017) (citations omitted). A proceeding "can be considered core 'if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function.'" *ICICI Bank Ltd.*, 565 B.R. at 249 (quoting *Universal Oil Ltd. v. Allfirst Bank* [*In re Millenium Seacarriers, Inc.*], 419 F.3d 83, 97 [2d Cir. 2005]). Meanwhile, a proceeding is considered "non-core" if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction. *ICICI Bank*, 565 B.R. at 249 (quoting *DeWitt Rehab & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 [S.D.N.Y.]). In this case, no party has argued that the underlying dispute is "related" to Defendant Nicklin's Chapter 7 bankruptcy action. (Dkt No. 25-2; Dkt. No. 35.) Accordingly, the Court will treat the immediate action as a non-core proceeding for the purpose of the motions at issue.

subject of the action is situated . . . ." 28 U.S.C. § 1391. When a plaintiff's choice of venue is improper, a district court may *sua sponte* transfer the case in the interest of justice and for the convenience of the parties and witnesses. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 n.3 (2d Cir. 1966) (noting that § 1406(a) allows the district judge to dismiss the case or transfer venue *sua sponte*, even when venue is improper); *Lead Indus. Assoc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer [s]ua sponte . . . ."); *Flaherty v. All Hampton Limousine. Inc.*, 01-CV-9939, 2002 WL 1891212, at *3 (S.D.N.Y. Aug. 16, 2002). "The purpose of [transferring venue] 'is to prevent the 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Flaherty*, 2002 U.S. Dist. LEXIS 15171, at *3.

III.    **ANALYSIS**

    The Court will decide Defendant Gorguze's motion to remand before turning to Defendant Riverlife's motion to transfer venue, because, setting aside its aversion to transferring undecided motions to other district courts, the Court finds it improper to decide a motion to transfer a case over which it should abstain from exercising jurisdiction.

    A.    **Whether Defendant Gorguze's Motion to Remand Should Be Granted Because Abstention Is Appropriate**

    After carefully considering the matter, the Court answers this question in the negative for

the reasons stated below.

Under 28 U.S.C. § 1452(a), any party to a state court civil action may remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of 28 U.S.C. § 1334. 28 U.S.C. § 1452(a). Federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Litigation is "related to" "a pending bankruptcy proceeding [if] its outcome might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). In general, the proponent of federal subject-matter jurisdiction has the burden of establishing that jurisdiction applies to a removed action. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-58 (2d Cir. 2006).

### 1. Mandatory Abstention

The party moving for remand under a mandatory abstention theory bears the burden of "demonstrating that all statutory requirements have been satisfied, and [the moving party] must offer some proof to support its assertions." *Marah Wood Productions, LLC, v. Jones*, 534 B.R. 465, 475 (Bankr. Conn. 2015) (citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580-82 [2d Cir. 2011] ["*Parmalat I*"]). To determine whether abstention is required, courts consider the following six factors:

> (1) [whether] the motion to abstain was timely; (2) [whether] the action is based on a state law claim; (3) [whether] the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) [whether] Section 1334 provides the sole basis for federal jurisdiction; (5) [whether] an action is commenced in state court; and (6) [whether] . . . the action can be timely adjudicated in state court.

*In re Refco, Inc. Secs. Litig.*, 628 F. Supp.2d 432, 445 (S.D.N.Y. 2008) (internal quotation marks

omitted).  Whether an action can be "timely adjudicated" in state court is determined by

evaluating the following four factors:

> (1) the backlog of the state court's calendar relative to the federal court's
> calendar; (2) the complexity of the issues presented and the respective
> expertise of each forum; (3) the status of the title 11 bankruptcy
> proceeding to which the state law claims are related; and (4) whether the
> state court proceeding would prolong the administration or liquidation of
> the [bankruptcy] estate.

*Parmalat 1*, 639 F.3d at 580.  When analyzing the "timely adjudicated" factor, courts "have

placed the burden of proof on the party *opposing* remand."  *In re AOG Entm't, Inc.*, 569 B.R.

563, 573 (Bankr. S.D.N.Y. 2017) (emphasis in original).

In this case, the Court finds that the backlog-of-the-state-court's-calendar factor weighs

slightly against remand.[4]  Defendant Riverlife failed to present any evidence to support its

opposition to timely adjudication in state court.  (Dkt. No. 35, at 12-14.)  However, the Court

recognizes that, at the very least, there will be an additional delay because Plaintiff replaced C.L.

King as the named party in this action, which would require the refiling of new motions before

the state court.  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp*, 671, F.3d 261, 267 (2d Cir.

2012) ("*Parmalat 2*").  This delay slightly undercuts the state court's ability to timely adjudicate

this matter.  Accordingly, despite Defendant Riverlife's failure to address the state court's

calendar backlog in its entirety, this factor weighs slightly against remanding this action to state

---

[4]     Neither Defendant Riverlife nor Plaintiff disputes the first five factors required for
mandatory abstention.  (Dkt. No. 35, at 10-14; Dkt. No. 39.)  Instead, Defendant Riverlife argues
that mandatory abstention is not appropriate because the immediate action could not be "timely
adjudicated" in state court.  (Dkt. No. 35, at 10-14.)  Therefore, the Court will accept the first
five factors required for mandatory abstention for the purpose of this motion and will only
analyze the "timely adjudicated" factor.

court.

Second, the Court finds that the complexity of the issues presented and the expertise of each forum weighs slightly in favor of remanding the action to state court. "Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it." *In re AOG Entm't, Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017). In its opposition to the motion to remand, Defendant Riverlife argues that Plaintiff has succeeded C.L. King's interests in the lawsuit, and the action was still in its initial stages when removed. Defendant Riverlife again fails to address why state court is not the proper forum to apply New York law, or how federal courts have a greater expertise in bankruptcy-related cases. (Dkt. No. 35, at 10-14.) However, the Court notes that federal courts routinely hear bankruptcy proceedings as well as non-core proceedings. 28 U.S.C. §§ 1334, 1452. Therefore, this factor weighs slightly in favor of remanding this action to state court.

The third factor, the "status of the title 11 bankruptcy proceeding to which the state law claims are related," weighs against remand. Courts interpreting the phrase "timely adjudication" "have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of the bankruptcy case." *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (quoting *In re Midgard Corp*, 204 B.R. 764, 778 [10th Cir. 1997]).

> [A] trustee in a chapter 11 reorganization may require expeditious resolution of the state law claims in order to determine what resources are available to fund the chapter 11 reorganization. For this reason, courts have found that what might be timely in the Chapter 7 context is not necessarily timely in Chapter 11 cases where time is of the essence.

*Parmalat 1*, 639 F.3d at 581. Although Chapter 7 proceedings do not necessarily require state court claims to be resolved first, a "court may, however, find that a particular . . . proceeding

does create a need for urgency among the litigants in the state law proceeding." *Id.* at 581 n.9.

In this case, the immediate action is related to Defendant Nicklin's Chapter 7 proceeding because it may have a conceivable effect on the estate. *In re New 118th LLC*, 396 B.R. at 890. On the record before this Court, Plaintiff has not submitted a confirmed liquidating plan in Defendant Nicklin's Chapter 7 bankruptcy proceeding, presumably because Plaintiff is awaiting the Court's decision. Although Chapter 7 bankruptcy proceedings do not ordinarily require the same expeditious resolution as a Chapter 11 bankruptcy proceeding, the Court concludes that the immediate action needs to be resolved quickly to avoid prolonging the administration of Defendant Nicklin's estate. Accordingly, the third factor weighs against remand.

Finally, the fourth factor, "whether a state court proceeding would prolong the administration or liquidation of the bankruptcy estate" weighs slightly against remand. In a Chapter 7 proceeding there is no administrative urgency or plan of reorganization to facilitate and timely adjudication can be weighed relatively lightly." *Parmalat 2*, 671 F.3d at 268-69 (quoting *In re Leco Enters., Inc.*, 144 B.R. 244, 251 [S.D.N.Y. 1992]). However, the issue is whether abstention "unduly prolong[s] the administration of the estate." *Parmalat 1*, 639 F.3d at 58.

In this case, abstention would unduly prolong the administration of the estate for two reasons. First, Plaintiff opposes Defendant Gorguze's motion to remand. (Dkt. No. 39.) Second, remanding this action to state court would lead to repetitious discovery and parallel adjudication of common issues because Defendant Nicklin and Plaintiff are involved in eight other related actions in federal court, including Defendant Nicklin's Chapter 7 bankruptcy proceeding. Although Defendant Gorguze argues that the immediate action and the other related actions arise from wholly different transactions, no discovery has taken place to date to confirm

11

Defendant Gorguze's speculative position. (Dkt. No. 35, at 13.) Furthermore, although Defendant Gorguze argues that the state court entered a detailed decision in this matter, the state court's decision was a five-page opinion rejecting Defendant Nicklin and Riverlife's motion to dismiss; neither Defendant Gorguze nor Defendant Multi-Pack was the subject of the state court's decision. (Dkt. No. 1-13.) In fact, the state court did not have the opportunity to rule on Defendant Gorguze's motion to dismiss for lack of personal jurisdiction because this action was removed to federal court approximately five-months after the motion was filed. With the suit in its infancy, coupled with Plaintiff's opposition to remand, the Court concludes that the administration of Defendant Nicklin's estate would be unduly prolonged by remanding this action.

Based on its analysis of the four above-discussed factors, the Court concludes that mandatory abstention is not appropriate in this case. Accordingly, Plaintiff's motion for remand is denied under the mandatory abstention doctrine.

### 2. Permissive Abstention and Equitable Remand

A district court *may* also abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "As the permissive abstention and equitable remand factors overlap significantly, the Court analyzes them together." *Keybank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233 (S.D.N.Y. 2019) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 344 [S.D.N.Y. 2003] ["The equitable remand analysis . . . is essentially the same as the Section 1334(c)(1) abstention analysis."]). In this case, both parties analyze the following seven factors:

> (1) the effect of the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014).[5]  "Federal courts should be sparing in their exercise of discretionary abstention" under 28 U.S.C. § 1334(c)(1).  *In re Texaco Inc.*, 182 B.R. 937, 946-47 (Bankr. S.D.N.Y. 1995).

In this case, the Court finds that the first factor (i.e., the effect on the efficient administration of the bankruptcy estate) weighs against remand.  Generally, evidence relevant to the first factor includes (a) whether allowing the removed claim to proceed in the state court action would have a significant impact upon the administration of bankruptcy estate,[6] or interfere with the bankruptcy proceeding,[7] (b) the extent there might be any delay in the action due to

---

[5]     Generally, district courts in this Circuit consider twelve factors in deciding whether to abstain pursuant to 28 U.S.C. § 1334(c)(1): "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted core proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (internal quotation marks omitted).  However, because both parties assert arguments regarding only seven factors, the Court will limit its analysis to the contested factors. (Dkt. No. 25-2, at 10-13; Dkt. No. 35, at 14-17; Dkt. No. 43, at 11-15.)

[6]     *In re 47-49 Charles Street, Inc.*, 211 B.R. 5, 7 (S.D.N.Y. 1997)

[7]     *Shiboleth v. Yerushalmi*, 412 B.R. 113, 117 (S.D.N.Y. 2009).

congestion on the bankruptcy court's docket,[8] and (c) whether the bankruptcy court possesses less expertise and familiarity with the case than does the state court.[9] Here, as pointed out by Defendant Gorguze, "it is the Chapter 7 trustee–not [Defendant Riverlife]–that decides whether the claims asserted in the [a]ction are merited and worth pursuing in the bankruptcy proceeding for the benefit of [Defendant] Nicklin's creditors." (Dkt. No. 25-2, at 11.) As previously discussed, Plaintiff, the Chapter 7 trustee, opposes Defendant Gorguze's motion to remand "for substantially the same reasons as those set forth in the opposition filed by [Defendant Riverlife] . . . ." (Dkt. No. 39, at ¶ 4.) Furthermore, forcing Plaintiff to appear in multiple jurisdictions would not promote the efficient administration of the bankruptcy estate, particularly in light of the potential to coordinate discovery in all related actions. Accordingly, the Court concludes that this action, together with the seven other removed cases pending before the Court, could have a significant impact on the administration of the bankruptcy estate and interfere with the bankruptcy proceeding.

The Court finds that the second and third factors (i.e., the extent to which issues of state law predominate, and the difficulty or unsettled nature of the applicable state law) weigh against remand. Generally, evidence relevant to the second and third factors includes the following: (a) the extent to which any non-state-law claims are present in the action,[10] (b) whether the state law

---

[8]     *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300 (Bankr. E.D.N.Y. 1997).

[9]     *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 696 (Bankr. E.D.N.Y. 1997).

[10]    *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300-01 (Bankr. E.D.N.Y. 1997).

is particularly complex or its application requires special expertise,[11] (c) whether the state court is more familiar with the case because it had been involved in it for a significant period of time,[12] and (d) whether the state court is well suited to efficiently adjudicate the matter.[13] Here, Defendant Gorguze has provided no support for her claim that the removed action is unsettled, particularly unusual, or unfamiliar to the Court. Although the Complaint's causes of action are based solely on New York State law, a "constructive fraudulent conveyance action brought by a trustee . . . under Section 544 is a claim arising under federal law." *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 111 (2d Cir. 2016.) Moreover, Defendant Gorguze does not cite to any case law or issue in the record in support of her claim that state law issues predominate federal or bankruptcy law, nor does she explain how the immediate action is unrelated to Defendant Nicklin's Chapter 7 bankruptcy proceeding.[14] Furthermore, the state court has not been involved in this action since it was removed from state court approximately twelve months

---

[11]     *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 301 (Bankr. E.D.N.Y. 1997).

[12]     *See In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 302 (Bankr. E.D.N.Y. 1997) (finding state court more familiar because it had been intimately involved in arbitration for more than a year); *Shiboleth v. Yerushalmi*, 412 B.R. 113, 117-18 (S.D.N.Y. 2009) (finding state court more familiar because had it conducted hearings and examined records for more than two years); *cf. Rahl v. Bande*, 316 B.R. 127, 118 (S.D.N.Y. 2004) (finding that judicial economy favored remand because state court special referee had been involved in case for more than two-and-a-half years).

[13]      *In re 47-49 Charles Street, Inc.*, 211 B.R. 5, 7 (S.D.N.Y. 1997); *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300-01 (Bankr. E.D.N.Y. 1997).

[14]      There "is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Liberty Mut. Ins. Co., v. Fairbanks Co.*, 17 F. Supp. 3d 385, 397 (S.D.N.Y. 2014) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 [2d Cir. 1968]).

ago, has not overseen the completion of discovery, and has not deemed the case ready for trial. For all of these reasons, the Court finds that the second and third factors weigh against remand.

The Court finds that the fourth factor (i.e., comity) is neutral, weighing in favor of remand as much as it weighs against remand (because considerations of comity to the state court exist as much as do considerations of comity to the bankruptcy court).[15]

The Court finds that the fifth factor (i.e., the degree of relatedness or remoteness of the proceeding to the main bankruptcy case) is neutral, weighing as much in favor of remand as it weighs against remand. Evidence relevant to the fifth factor includes (a) whether the state court proceeding had arisen a significant length of time before the date of the bankruptcy petition,[16] and (b) whether the state court action is the "focal point" of the bankruptcy proceeding.[17] Here, the state court proceeding was commenced on September 15, 2017, nearly seventeen months before the Plaintiff was elected to serve as trustee on February 21, 2019. However, the Court imagines that potential adverse judgments in actions like the state court proceeding below played a significant role in Defendant Nicklin's debtors' filing of their bankruptcy petition. Because these facts essentially negate each other, the Court finds this factor to be, by and large, neutral.

The Court finds that the sixth factor (i.e., the existence of a right to a jury trial) is neutral, weighing in favor as remand as much as it weighs against remand (because neither party focuses

---

[15]    *See LMRT Assoc., LC v. MB Airmont Farms, LLC*, 447 B.R. 470, 474 (E.D.Va. 2011) (considering comity to bankruptcy court as factor).

[16]    *See Shiboleth v. Yerushalmi*, 412 B.R. 113, 116-17 (S.D.N.Y. 2009) (finding that the degree of relatedness or remoteness of the state court proceeding to the bankruptcy proceeding was minimal where prior had arisen two years before latter).

[17]    *In re Montague Pipeline Techn. Corp.*, 209 B.R. 295, 302 (Bankr. E.D.N.Y. 1997).

on this factor, and Plaintiffs' right to a jury trial would in all likelihood be honored in federal court).

The Court finds that the seventh factor (i.e., prejudice to the party involuntarily removed from state court) weighs strongly against remand. Generally, evidence relevant to the seventh factor includes (a) whether actions have already been taken in the state court proceeding,[18] and (b) whether retention of jurisdiction by federal court would result in significant, prejudicial delay in matter that could be resolved in an expeditious manner in the state court forum.[19] Here, as stated above, the state court proceeding was in its infancy before being removed to federal court (issuing one five-page decision denying Defendant Nicklin and Riverlife's motion to dismiss for failure to state a claim). Although Defendants Gorguze and Multi-Pack filed a motion to dismiss for lack of personal jurisdiction, the proceeding was removed before the state court issued a decision. The Court notes that Defendant Riverlife does not contest the existence of prejudice; rather, it merely tries to diminish it by arguing that Plaintiff could have brought the immediate proceeding in the Southern District of New York. (Dkt. No. 35, at 16.). The Court rejects this argument as unconvincing because Defendant Riverlife offers no evidence as to how this proceeding could have been brought in the Southern District. However, Defendant Gorguze fails to address how she would be significantly prejudiced by the Court retaining jurisdiction in this matter. Accordingly, the Court concludes that the seventh factor weighs strongly against remand.

The Court finds that the eighth, ninth, tenth and eleventh factors (i.e., whether judicial

---

[18]    *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 697 (Bankr. E.D.N.Y. 1997).

[19]    *In re Montague Pipeline Techn. Corp.*, 209 B.R. 295, 302-03 (Bankr. E.D.N.Y. 1997).

economy would be served by equitable remand, whether 28 U.S.C. § 1334[b] is the sole basis for exercising federal jurisdiction, whether the proceeding involves non-debtors, and the likelihood that the proceeding was removed to federal court because of forum-shopping) are neutral. The New York Supreme Court would not be able to more economically decide this proceeding due to Plaintiff's consent to the removal and transfer of the seven related cases, Section 1334(b) is indeed the sole basis for exercising federal jurisdiction over this proceeding, this proceeding involves a non-debtor, and Defendants have conceded they removed this proceeding in the effort to transfer venue to the Southern District of New York.

In sum, the first, second and third factors weigh slightly against remand; the seventh factor weighs strongly against remand; and the fourth, fifth sixth, eighth, ninth, tenth and eleventh factors are neutral. Balancing these factors, the Court finds that equitable remand is not appropriate under 28 U.S.C. § 1452(b). In the alternative, the Court finds that permissible abstention is not appropriate under 28 U.S.C. § 1334(c) for essentially the same reasons.

Accordingly, Defendant Gorguze's motion to remand is also denied under the equitable remand and permissive abstention doctrines.

### B. Whether Defendant Riverlife's Motion to Transfer Venue Should Be Granted

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.

When considering whether to transfer a case, a district court must conduct "a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer." *Advanced Fiber Tech. Trust*

*v. J & L Fiber Serv. Inc.*, 07-CV-1191, 2008 WL 4890377, at *1 (N.D.N.Y. Nov. 12, 2008)

(Homer, J.) (citation omitted); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,

928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013). The party moving to transfer venue bears the burden

of showing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins.*

*Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Whether to dismiss or transfer a

case lies within the sound discretion of the court. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d

95, 105 (2d Cir. 2006); *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 248 (N.D.N.Y. 2001)

(Kahn, J.).

### 1. Whether the Action Could Have Been Brought in the Southern District of New York

The parties first dispute that the Southern District of New York is a district where the

action could have been brought. In support of its conclusory argument, Defendant Riverlife

baldly asserts that this action could have been brought in the Southern District of New York

because all Defendants are residents of New York State. However, Defendant Riverlife's

position is meritless. C.L. King's Complaint expressly alleges that Defendant Multi-Pack is "a

foreign limited liability corporation registered in the State of Delaware with a principal place of

business located in Wilmington, Delaware," and that Defendant Gorguze "is an individual and

resides in La Jolla, California." (Dkt. No. 1-1, at ¶¶ 14-16.) Accordingly, Defendant Riverlife's

position is contrary to the factual allegations of the Complaint. Moreover, Defendant Riverlife

has failed to adduce admissible evidence in support of its position. Therefore, Defendant

Riverlife is unable to establish venue is proper under 28 U.S.C. § 1391(b)(1).

Nevertheless, venue can also exist in "a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. 1391(b)(2). To determine whether venue is appropriate under 28 U.S.C. 1391(b)(2), courts must "1) identify the nature of the claims and the alleged acts or omissions giving rise to the claims, and 2) determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011).

### a. Nature of Claims

Here, C.L. King's Complaint asserts causes of action centered around Defendant Nicklin's fraudulent conveyances, both personally and through entities controlled by Defendant Nicklin, in an attempt to frustrate C.L. King's ability to recover an arbitration award. (Dkt. No. 1-1, at ¶¶ 1-3.) On March 3, 2017, the Hon. Eileen Bransten, Supreme Court of the State of New York, County of New York, confirmed the arbitration award, and subsequently entered judgment against Defendant Nicklin. (Dkt. No. 1-1, at ¶¶ 4-5.) Additionally, C.L. King asserts that Defendant Nicklin engaged in several fraudulent transfers, conveyances, and business transactions with Defendant Multi-Pack, Defendant Riverlife, and Defendant Gorguze before and during the course of the arbitration proceeding against him. (Dkt. No. 1-1, at ¶ 6.)

### b. Substantial Part of Events

"'Substantiality' for venue purposes is more a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 531 (E.D.N.Y. 2014) (quoting *Cold Spring Harbor Lab.*, 762 F. Supp. 2d at 553). The Second Circuit has cautioned courts to construe the venue

statute strictly. *Blakley v. Lew*, 607 F. App'x 15, 17 (2d Cir. 2015) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 [2d Cir. 2005]). "That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Blakley*, 607 F. App'x at 17 (emphasis in original). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005). "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a substantial part of the events are to be considered." *Fedele v. Harris*, 18 F. Supp. 3d 309, 317 (E.D.N.Y. 2014) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 [11th Cir. 2003]).

In this case, the Southern District of New York satisfies the statutory requirements of 28 U.S.C. 1391(b)(2).[20] Defendant Nicklin resides in Newburgh, New York, which is located within

---

[20] Based on the current record, the Court cannot conclude that a substantial part of the events giving rise to this action occurred within the Northern District of New York. Multiple courts have found that "venue determinations based solely on the location of the harm is contrary to Congress's intent in drafting section 1391(b) and the Second Circuit's directive that the venue analysis should focus on the relevant activities of the defendants." *Fedele v. Harris*, 18 F. Supp. 3d 309, 318 (E.D.N.Y. 2014) (quoting *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 548 [E.D.N.Y. 2011]); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Based on the record currently before the Court, Plaintiff's sole connection to the Northern District of New York is that C.L. King's principal place of business is located in Albany, New York. (Dkt. No. 1-1, at ¶ 11.) Neither Defendant Riverlife nor Plaintiff has shown that a substantial part of the events or omissions giving rise to the claims occurred in the Northern District. Accordingly, the Northern District of New York should not be the venue of the action under 28 U.S.C. § 1391(b)(2).

the Southern District of New York.[21] C.L. King secured an arbitration award against Defendant Nicklin, and the Hon. Eileen Bransten confirmed the award in the Supreme Court of the State of New York, County of New York, by entering a judgment against Defendant Nicklin.[22] (Dkt. No. 1-1, at ¶¶ 3-4.) Moreover, the Complaint also asserts that Defendants Gorguze and Multi-Pack fraudulently entered into a settlement agreement with Defendant Nicklin in an attempt to satisfy a partial judgment against Defendant Nicklin while he was a party to an active arbitration initiated against him by C.L. King. (Dkt. 1-1, at ¶¶ 35, 50.) The Court further notes that the settlement agreement between Defendants Nicklin and Gorguze contains a forum selection clause that explicitly assents to the "exclusive jurisdiction of the state or federal courts located in" the County of New York, State of New York.[23] (Dkt. No. 42-2, at ¶ 18.) Furthermore, Plaintiff has consented to the transfer of venue to the Southern District of New York. (Dkt. No. 39.) Therefore, the Court finds that Defendant Riverlife has established by clear and convincing evidence that a substantial part of the material events or omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

Accordingly, the Court concludes that the immediate action could have been originally

---

[21]     A court may take judicial notice at "any stage of the proceeding," of any fact "that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). Accordingly, the Court takes judicial notice that Newburgh, New York, is located within Orange County, New York, and that Orange County is one of the counties located within the Southern District of New York.

[22]     For the reasons stated above in note 21 of this Decision and Order, the Court takes judicial notice that the County of New York is located within the Southern District of New York.

[23]     The settlement agreement also assents to jurisdiction in the state or federal courts located in the County of San Diego, California. (Dkt. No. 42-2, at ¶ 18.)

brought in the Southern District of New York.

### 2. Whether the Balance of Convenience and Justice Favors Transfer

Courts in the Second Circuit consider the following non-exclusive list of factors when

determining whether transfer is warranted:

> (1) the convenience of the witnesses and the availability of process to
> compel the attendance of unwilling witnesses; (2) the convenience of the
> parties; (3) the location of relevant documents and the relative ease of
> access to sources of proof; (4) the locus of operative facts; (5) the relative
> means of the parties; (6) the comparative familiarity of each district with
> the governing law; (7) the weight accorded to the plaintiff's choice of
> forum; and (8) judicial economy and the interests of justice.

*Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013). "No

individual factor is determinative and a court has discretion to weigh each factor to reach a fair

result." *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 449 (N.D.N.Y. 2007) (Scullin, J.)

(quoting *Flaherty*, 2002 WL 1891212, at *4). When deciding whether to dismiss or transfer a

case with improper venue, "the Court takes into account the ultimate goal of the 'expeditions and

orderly adjudication of cases and controversies on their merits.'" *Fedele*, 18 F. Supp. 3d at 319.

### a. Convenience of Witnesses and Parties

"Convenience of both the party and non-party witnesses is probably the single-most

important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp.

v. Bethke*, 1 F. Supp. 3d 6, 29-30 (E.D.N.Y. 2014) (quoting *Fuji Photo Film Co., Ltd. v. Lexar

Media, Inc.*, 415 F. Supp. 2d 370, 373 [S.D.N.Y. 2006]). "The convenience of the parties favors

transfer when transfer would increase convenience to the moving party without generally

increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co., v. Fairbanks Co.*, 17 F.

Supp. 3d 385, 397 (S.D.N.Y. 2014) (citing *Royal Ins. Co., v. Tower Records, Inc.*, 02-CV-2612,

2002 WL 31385815, at *6 [S.D.N.Y. Oct. 22, 2002]). However, "[t]he parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Liberty Mut. Ins. Co.,* 17 F. Supp. 3d at 399 (quoting *AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1 of Snohomish Cty., Wash.*, 675 F. Supp. 2d 354, 370 [S.D.N.Y. 2009]).

In this case, the convenience of the witnesses and parties weigh strongly in favor of transferring venue to the Southern District of New York. In support of her opposition, Defendant Gorguze argues that three of the four Defendants are out-of-state residents; however, this argument is misleading. Although domicile is usually the best measure of convenience of the forum, Defendant Riverlife is the alleged "alter ego" of Defendant Nicklin, who resides within the Southern District of New York. *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011); (Dkt. No. 30-1, at 3.) Additionally, Plaintiff is domiciled within the Southern District of New York, and has also consented to Defendant Riverlife's motion to transfer venue. *Kahane v. Carlson*, 527 F.2d 492, 393 (2d Cir. 1975); *see Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (a party's "bald assertion, completely unsupported by evidence [does] not satisfy [its] burden"); (Dkt. No. 39.) Although Defendant Gorguze (in both her individual capacity and as Trustee of the Lynn. E. Gorguze Separate Property Trust and the Vincent & Gloria Gorguze Trust) is a resident of California, she fails to identify how transferring venue to the Southern District of New York would increase the inconvenience to both herself as well as Defendant Multi-Pack. Instead, Defendant Gorguze attempts to prioritize her domicile as compared to Plaintiff and the remaining Defendants. (Dkt. No. 40, at 11.)

Defendant Gorguze also argues that most of the relevant witnesses reside outside New

York State.[24]  (Dkt. No. 41, at ¶¶ 4-5.)  However, Defendant Gorguze identifies herself (in both her individual and Trustee capacity) and Defendant Multi-Pack as witnesses who would be inconvenienced by transferring venue to the Southern District of New York.  (Dkt. No. 40, at 11 n.5.)  As previously discussed, Defendant Gorguze fails to identify anything other than the purported domicile to establish inconvenience to the witnesses.

Therefore, based on the reasons above, the convenience of the parties and witnesses factors weigh in favor of transferring venue to the Southern District of New York.

### b.  Locus of Operative Facts

Courts look to the "'site of the events from which the claim arises.'"  *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 370 (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 [S.D.N.Y. 1994]).  "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received."  *Mazuma Holding Corp.*, 1 F. Supp. 3d at 31 (quoting *Purcell Graham, Inc. v. National Bank of Detroit*, 93-CV-8786, 1994 WL 584550, at *4 [S.D.N.Y. Oct. 24, 1994]) (finding transfer of venue appropriate where material acts and omissions underlying plaintiff's complaint occurred in transferee district).

As previously discussed above in Part III.B.1.b of this Decision and Order, a substantial

---

[24]  Defendant Gorguze cites to Henderson Enterprises Group, Inc. ("Henderson" and Tank Holdings ("Tank") as witnesses whose securities are involved in the allegedly fraudulent transaction.  (Dkt. No. 41, at ¶ 5 [Weiner Affidavit].)  However, the same document swears that the fraudulent conveyances asserted in the Complaint derive from a settlement agreement executed by Defendants Nicklin, Riverlife, and Gorguze on July 13, 2015, and fails to demonstrate how Henderson or Tank were involved in the conveyance itself.  (Dkt. No. 41, at ¶ 4.)  Therefore, neither Henderson nor Tank is considered a witness for the purpose of this motion.

part of the events giving rise to C.L. King's Complaint took place within the Southern District of New York. The Court only adds that C.L. King originally sought to confirm the arbitration award in a state court located within the Southern District of New York, despite being residents of Albany County, New York. Accordingly, the Court finds that the "locus of operative facts" weighs strongly in favor of transferring venue to the Southern District of New York.

### c.     Weight Accorded to Plaintiff's Choice of Forum

"The Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'" *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 368 (quoting *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 [S.D.N.Y. 2009]). This is especially true when 'there is a material connection between the forum state and the underlying events.'" *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 399 (quoting *Accantia Grp. Holdings v. Food Market Merchandising, Inc.*, 908 F. Supp. 2d 439, 441-42 [S.D.N.Y. 2012]). However, that deference is reduced where the plaintiff's choice of forum is not its home forum. *Mazuma Holding Corp.*, 1 F. Supp. 3d at 29.

In this case, C.L. King's original choice of forum does not weigh either for or against transfer because C.L. King is no longer a party to this action. Pursuant to 11 U.S.C. § 544, Plaintiff, as the appointed bankruptcy trustee, divested C.L. King of standing to recover allegedly fraudulent conveyances. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 111, 114 (2d Cir. 2016) ("All the caselaw agrees that the trustee *et al.*'s powers under section 544 are exclusive . . . ."). Therefore, C.L. King's choice of forum does not weigh either for or against transfer because the plaintiff in the immediate action did not have the opportunity to choose where to file his case.

### d. Judicial Economy and the Interests of Justice

"Trial efficiency and the interest of justice are important factors in a . . . transfer [of venue] analysis, and may be determinative in a particular case." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 397 (citing *Tucker Anthony, Inc. v. Bankers Trust Co.*, 93-CV-0257, 1994 WL 9683, at *8 [S.D.N.Y. Jan. 10, 1994]). "One factor traditionally considered in deciding whether a transfer is warranted in the 'interest of justice' is whether related litigation can be consolidated by transference to a single forum." *Id.* (quoting *Tucker Anthony, Inc.*, 2014 WL 9683 at *8). There "is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Id.* (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 [2d Cir. 1968]).

In this case, judicial economy and the interests of justice weigh in favor of transferring venue to the Southern District of New York. First, Defendant Nicklin's Chapter 7 bankruptcy action was filed in the Southern District of New York's Bankruptcy Court. Second, there are seven other actions related to this action, all of which were consented to be transferred to the Southern District of New York.[25] Moreover, both parties argued that this action was "related" to Defendant Nicklin's bankruptcy action. Therefore, it follows that this action is related to each of the other eight actions currently venued in the Southern District. The Court concludes that transferring this action will further the interests of justice by limiting duplicitous litigation and eliminating the potential for inconsistent results from separate jurisdictions.

---

[25] (Dkt. Nos.1-19-cv-0229, 1-19-cv-0234, 1-19-cv-0243, 1-19-cv-0244, 1-19-cv-0245, 1-19-cv-0248, and 1-19-cv-0250.)

In sum, the first, second, fourth, and eighth factors weigh strongly in favor of transferring venue while the third, fifth, sixth, and seventh factors are neutral.[26] Balancing these factors, the Court finds that transfer of venue to the Southern District of New York is appropriate under 28 U.S.C. § 1391(b) and 28 U.S.C. §1406(a).

Therefore, the Court concludes that, in the interests of justice, this action is to be transferred to the Southern District of New York.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Gorguze's motion to remand this action to state court (Dkt. No. 25) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant Riverlife's motion to transfer venue to the Southern District of New York (Dkt. No. 30) is **<u>GRANTED.</u>**

Dated: January 13, 2020
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[26] The Court notes that the following factors were not analyzed by any party: (3) the "location of relevant documents and the relative ease of access to sources of proof" factor, (5) the "relative means of the party" factor, and (6) the "comparative familiarity of each district with the governing law" factor. Accordingly, the Court finds that each of the above factors neither weigh for nor against the transfer of venue.